**MAYFAIR CONSTRUCTION COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

No. 87–1251.

United States Court of Appeals, Federal Circuit.

March 9, 1988.

Richard C. Walters, Schnader, Harrison, Segal & Lewis, Washington, D.C., argued for appellant. With him on the brief was Alan H. Kent.

Carolyn E. Galbreath, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were Larry W. Mohl and Michael S. Moran, Defense Logistics Agency, St. Louis, Mo., of counsel.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

Mayfair Construction Company (Mayfair) appeals from a decision of the Armed Services Board of Contract Appeals (ASBCA),

*Mayfair Construction Co.*, ASBCA No. 30800, 87-1 BCA ¶ 19,542, denying Mayfair's appeal. We affirm.

## BACKGROUND

On September 5, 1980, the Department of the Air Force awarded a contract to Mayfair for the "Pacer Down" facilities restoration project at McConnell Air Force Base, Kansas, in the amount of $4,176,296. This contract incorporated by reference the March 1979 version of the Defense Acquisition Regulation Disputes clause.

On January 28, 1982, the contracting officer terminated the contract for the convenience of the government. Mayfair submitted a termination settlement proposal to the contracting officer on June 17, 1982, in the amount of $990,937.29. By letter of August 2, 1982, Mayfair's counsel denominated the June 17, 1982 proposal as a claim under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 et seq. (1982), and enclosed certification of the proposal as a claim.

On December 11, 1984, Mayfair forwarded an updated termination settlement proposal to the contracting officer in the amount of $610,172, and certified this proposal as a claim under the CDA. The proposal included a request for interest from August 2, 1982, to December 10, 1984, in the amount of $146,612.12.

On February 14, 1985, the parties entered into a termination supplemental agreement under which they agreed that the government would pay Mayfair $438,-346 for its termination costs. This agreement, however, expressly reserved Mayfair's claim for interest. On the same date, the contracting officer issued a final decision denying Mayfair's claim for interest. Thereafter, Mayfair appealed to the ASBCA, which held that the Disputes clause of the contract defined "claim" to require the existence of a dispute; no dispute existed between the parties, therefore no claim existed; and consequently, no interest would be allowable under the CDA where there was no claim.

## ISSUES

1. Whether Mayfair's termination settlement proposal constitutes a claim.

2. Whether Mayfair may recover interest on its termination settlement proposal.

## OPINION

### I.

■ The contract at issue specifically incorporated by reference the March 1979 version of the Disputes clause. That clause defined claim as follows:

(b) "Claim" means:

(1) a written request submitted to the Contracting Officer;

(2) for payment of money, adjustment of contract terms, or other relief;

(3) *which is in dispute....*

44 Fed.Reg. 12,524 (1979) (emphasis added). It is beyond cavil that under this clause, no claim exists unless it involves a dispute.

As a matter of fact, the ASBCA found here that no dispute existed between the parties. It looked to Mayfair's substantial concurrence with an August 1982 government audit report, and the large reductions Mayfair made thereafter in its proposed settlement. It noted that excluding the $146,612.12 interest element of Mayfair's December 1984 settlement proposal, the final settlement agreement for $438,346 gave Mayfair only $25,213.88 less than the $463,559.88 it had requested in December 1984. As a result, the ASBCA characterized Mayfair and the government during this period as being in "a pre-dispute, negotiation posture." *Mayfair*, 87-1 BCA at 98,744.

We must treat the ASBCA's factual findings as final unless "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith," or unless those findings are "not supported by substantial evidence." 41 U.S.C. § 609(b) (1982). There is nothing here to suggest these findings are fraudulent, arbitrary, capricious, or grossly erroneous. With respect to the substantial evidence standard, this "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Universal Camera Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). In our view, a reasonable fact-finder could have found as the ASBCA did. Therefore, we hold that the ASBCA's conclusion that no dispute existed between Mayfair and the government is supported by substantial evidence. Under the terms of the controlling contractual provision, consequently, Mayfair's termination settlement proposal did not constitute a claim.

Mayfair attempts to resist this result with two arguments. First, Mayfair states that a revised Disputes clause that did not require a claim to be disputed superseded the March 1979 Disputes clause in Mayfair's contract. Mayfair notes that the new clause was issued on April 30, 1980, well before the award of the subject contract, on September 5, 1980. This argument, however, does not wash. The new clause applied only to contracts resulting from solicitations issued on or after June 1, 1980. 45 Fed.Reg. 31,035, 31,037 (1980). Because the solicitation for the subject contract was dated February 17, 1980, Mayfair, 87–1 BCA at 98,741, the new clause is inapplicable.

Mayfair also contends that the CDA does not require a claim to be disputed, and as such, the terms of the Disputes clause requiring a dispute are in violation of the statute. In order to dispose of this case, we need not, and do not, decide whether the CDA requires a claim to be disputed.* If we were to decide that the CDA requires a dispute, the March 1979 Disputes clause would certainly be valid. If we were to decide that the CDA does not require a dispute, this would not mean that the CDA *prohibits* the parties from agreeing to such a requirement, and there is nothing in the language of the CDA to suggest such a prohibition. Thus, Mayfair's argument

that the March 1979 Disputes clause is in violation of the CDA is without merit.

## II

■ Mayfair's request for interest on its termination settlement proposals is governed by the Court of Claims decision in *Nab–Lord Associates v. United States*, 682 F.2d 940, 230 Ct.Cl. 694 (1982). There the Court of Claims held that the CDA does not authorize an interest award unless a contractor demands interest on a claim cognizable under the CDA. *Id.* at 943–44. For the reasons already given, Mayfair's termination settlement proposals were not cognizable claims. Therefore, any demand for interest that relies on these proposals as the underlying basis for an interest demand must fail.

In its December 11, 1984 settlement proposal, Mayfair demanded interest on its August 2, 1982 proposal on the theory that the earlier proposal had been properly certified as a CDA claim. However, because the earlier settlement proposal was not a claim, the demand for interest was unallowable.

Because Mayfair also certified its December 11, 1984 proposal as a CDA claim, it alleges that interest should run on the interest component of that "claim." We may dispose of this argument without reaching the broader issue of whether the CDA permits interest to run on an interest claim. Having held that the interest component of the December 1984 proposal was unallowable, no corpus remains on which interest can run. Therefore, no basis exists on which Mayfair may recover interest.

AFFIRMED.

BENNETT, Senior Circuit Judge, dissenting.

I respectfully dissent. The majority concludes that substantial evidence supports the board's conclusion that no "dispute" existed between the parties since the

---

* The dissent focuses on construing the CDA, and determines that the CDA does not require a claim to be disputed. The dissent's analysis, however, virtually ignores the *contract clause* requiring the existence of a dispute. In contrast to the dissent, we consider the terms of that clause to be dispositive.

government's final settlement payment was "only" $25,213.88 less than Mayfair's second termination settlement proposal, which had been certified as a claim pursuant to the requirements of the Contracts Disputes Act (CDA), 41 U.S.C. § 605(c)(1) (1982). That alone provides ample reason to dissent since, in my view, a disagreement over $25,213.88 is a quite substantial and sufficient dispute, even assuming that a dispute was indeed needed for the existence of a CDA claim under the terms of the subject contract. However, the issue over the existence of a dispute is not even that close, as the evidence of dispute was far greater than a disagreement over $25,213.88.

Following the government's termination for convenience of the Mayfair contract on January 28, 1982, Mayfair submitted a termination settlement proposal in the amount of $990,937.29. On August 2, 1982, Mayfair identified and certified the settlement proposal as a claim under the CDA. Over 2 years later, in December 1984, Mayfair submitted a second certified settlement "proposal" in the amount of $463,559.88 (not including an amount claimed as interest on that figure). It was not until May 28, 1985, that the government paid Mayfair $438,346, which represented the second proposal amount minus the disputed $25,213.88, in settlement of its termination for convenience claim.

Thus, Mayfair did not receive the government's final payment until 40 months after the government terminated the contract and the final payment received was $552,591.29 less than Mayfair's initial settlement proposal, which had been certified as a CDA claim almost 3 years before. In light of the time taken to resolve the amount due following the government's termination and the difference of over a half a million dollars between Mayfair's initial claim and the government's final payment,

I do not hesitate in concluding that substantial evidence does not support the majority's (and the board's) conclusion that the initial termination settlement proposal submitted by Mayfair was merely part of the usual and ordinary process of a convenience termination, and therefore could not constitute a claim since the parties were in "a pre-dispute, negotiation posture." *See Mayfair Construction Co.,* ASBCA No. 30800, 87–1 BCA ¶ 19,542.

My disagreement with the majority, however, is much more fundamental than a difference of opinion over the length of time or the amount of money needed to constitute a "dispute." In my view, a contractor's certified settlement proposal following the termination of a contract for the convenience of the government is as much a claim against the government related to a contract, *see* 41 U.S.C. § 605(a), as more "traditional" claims stemming from such events as constructive changes, delay, or defective specifications which unquestionably are treated as claims under the CDA. Yet here the majority unjustifiably allows contractor claims arising from convenience terminations to be segregated from all other types of claims arising from contracts with the government, despite no such distinction being made in the CDA.[1] Not only is the majority's position without support in the clear legislative history surrounding the enactment of the CDA, but it will serve as a strong disincentive to accurate submission and good faith negotiation of termination settlement proposals by contractors and to timely and orderly consideration of termination claims by the government. At a minimum, the majority view must be seen as heralding, at least with respect to termination claims, a return to the pre-CDA days of inflated settlement proposals as precursors to bargaining and of litigation as the primary means of claim resolution.

---

**1.** *See Walber Construction Co.,* HUD BCA No. 80–445–C2, 83–2 BCA ¶ 16,885 (concluding that the Federal Acquisition Regulations not allowing interest on amounts due under a settlement agreement arising out of a termination for convenience were superseded by the CDA). In fact, the board in *Walber* specifically noted that al-

though a termination settlement agreement claim is intended to be negotiated rather than unilaterally decided by the contracting officer and was not therefore subject to the pressure of a right to interest for less-than-immediate payment, the CDA made no such distinction between types of claims. *Id.* at 84,031.

Congress chose not to provide an express definition of "claim" in the CDA statute. But, as the dissenting board opinion in this case ably points out, there is no evidence that Congress intended "claim" to have a special meaning apart from its plain, ordinary meaning. 87–1 BCA at 98,746 (ordinary meaning of "claim" is " 'a demand for something rightfully or allegedly due; assertion of one's right to something' " (citation omitted)); *see also Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987); *Paragon Energy Corp. v. United States*, 645 F.2d 966, 971–76, 227 Ct.Cl. 176 (1981); *cf. In re Remington Rand Corp.*, 836 F.2d 825 (3d Cir.1988) (Congress used "claim" in the CDA in the traditional sense—as a legal cause of action). In the absence of contrary legislative history, the plain meaning of a statute should be followed. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Horner v. Jeffrey*, 823 F.2d 1521, 1525 (Fed.Cir. 1987). I am able to discern no congressional intent to exclude contractor claims resulting from government terminations for convenience from the provisions of the CDA. *See Essex Electro Engineers v. United States*, 702 F.2d 998, 1003 (Fed.Cir. 1983).[2]

Nor is there any evidence that Congress intended "claim" to incorporate, for the purposes of the CDA, the additional requirement of a dispute. As the board dissent also correctly points out, "claim" and "dispute" were not used synonymously by Congress in the text of the CDA. *See* 87–1 BCA at 98,747. Furthermore, the erroneous requirement of a dispute contained in the interim 1979 regulations defining "claim," referenced in the contract at issue,

was deleted from the final regulations adopted in 1980.[3] Deference to an interpretation of an agency charged with administration of a statute is not required where that interpretation conflicts with the statutory mandate or would conflict with the policy that Congress sought to implement. *E.g., Jeffrey*, 823 F.2d at 1531. This would appear to be especially true where the interpretation in question has been repudiated by the agency which originally proposed it. *See generally R.G. Beer Corp.*, ENG BCA No. 4885, 85–2 BCA ¶ 18,162. In short, the unmistakable legislative intent of Congress was to provide interest on all contractor claims arising from contracts with the government, regardless of whether the claims were litigated or settled after negotiation. *See* 41 U.S.C. § 611; *R.G. Beer*, 85–2 BCA at 91,199.

In determining that no valid claim under the CDA existed in the present case, the board majority rejected the analysis of *R.G. Beer* and instead relied on *Racquette River Construction Co.*, ASBCA No. 26486, 82–1 BCA ¶ 15,769. The board in *Racquette River* relied on a lack of a dispute and a lack of delay in settlement beyond a reasonable time to conclude that the contractor's settlement proposal following a termination for the government's convenience was not a claim. But examination of the facts indicates that the contractor submitted a claim for $91,454 and the government questioned at least $32,138 of it. Thus, the board's conclusion in *Racquette River* that no dispute existed appears contrived since much of the board's opinion delineates the contractor position and the corresponding government proposal, and then decides between the disputed positions. Even more curiously, the board

---

**2.** In *Essex,* this court allowed interest on a termination for convenience claim from the date that the claim was certified to the contracting officer. The court made no suggestion that claims stemming from the termination of a contract for the convenience of the government fell outside the terms of the CDA. In fact, the court in *Essex* also noted that the interest provision of the CDA superseded the interest clauses in the contracts litigated under the Act. 702 F.2d at 1003 & n. 9.

**3.** The final regulations provided the following definition:

(i) As used herein 'claim' means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

87–1 BCA at 98,743 (quoting 45 Fed.Reg. 31035 (May 9, 1980)). *See also Paragon,* 645 F.2d at 976.

in *Racquette River* had also disallowed reimbursement of attorney fees incurred in preparation of the claim against the government since "even prior to the incurrence of these fees, the conflict between the parties was disputatious and did reach the level of becoming a claim against the Government." 82–1 BCA at 78,052. In my view, *Racquette River* cannot be used as support for the result in this case since it contains a fundamental inconsistency in denying attorney fees due to the "disputatious" nature of the claim, yet also denying interest on the same claim because there was "no dispute" at the time of the claim's submission.[4]

The majority here attempts to avoid addressing the issue of whether the requirement of a dispute as a prerequisite for a claim under the CDA contravenes the statute by concluding that the CDA does not prohibit the parties from agreeing to additional requirements not expressly contemplated or provided by Congress in the statute. However, the clear intent of Congress should not be permitted by this court to be sidestepped so easily by the parties. It is quite doubtful that Congress intended, as the majority allows here, for the parties to create a different definition of claim in every contract involving the government, especially since the government is the party which provides that definition through its regulations governing its procurement process. As was observed by the board in *R.G. Beer,*

"[i]t would indeed be ironic if, by simply publishing a new and self-serving definition of the familiar term "claim," one of the contracting parties could regain its superior bargaining power and turn the event selected by Congress to "provide a specific date from which interest will be paid" into a variable date, and the benefit

intended to "serve as an incentive" for early submission of claims into a disincentive to early claim submittal or settlement."

85–2 BCA at 91,199.

The CDA was designed to end the prior practice rampant in the government contracting arena where a contractor would submit grossly inflated claims that had little relation to the facts, were improper as a basis for settlement, and were intended only as a starting point for bargaining. *See Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1382–83 (Fed.Cir.) (citing legislative history of the CDA), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed. 2d 103 (1983). To treat termination for convenience settlement proposals differently from other claims related to contracts and to ignore or prevent their certification as CDA claims encourages a return to submission of inflated proposals as a precursor to bargaining and contradicts the entire purpose of the CDA. This is not the type of negotiation posture intended by Congress or that should be encouraged by this court.

The legislative purpose behind 41 U.S.C. § 611, the interest provision in the CDA, adds further support for this conclusion. As discussed in *Fidelity,* 700 F.2d at 1384, Congress was concerned with fully compensating contractors for additional costs incurred in continuing performance under a contract. *See also* 87–1 BCA at 98,747. In the case of termination for convenience, the contractor's work may have been terminated prior to his receiving adequate compensation for the performance already completed. No interest is allowed for the time during which the contractor prepares the termination claim prior to its submission

---

**4.** In the present case, the government points to inconsistent assertions in Mayfair's letter containing its August 2, 1982 certification. In that letter, Mayfair attempted to draw a distinction between certification of a "claim" under the CDA sufficient to start the time for interest and a "prosecuted claim" for which recovery of legal fees associated with negotiation of a settlement proposal would not be reimbursed by the government. The government argues that Mayfair's attempted distinction between "CDA

claim" and "prosecuted claim" shows that Mayfair's settlement proposal was not a claim, despite the certification. Rejection of Mayfair's attempted distinction may indicate that by electing to certify its claim under the CDA, Mayfair correspondingly ended any possible entitlement to reimbursement for subsequent attorney fees associated with settlement negotiations concerning the claim, but it is not determinative as to whether its initial proposal should be considered a CDA claim once certified.

and certification. Allowing interest to accrue from the time that a contractor claim related to a contract is certified comports with congressional intent in providing adequate compensation to the contractor on its claims which are upheld. Furthermore, treating termination settlement claims no differently from other claims requires, through contractor compliance with the CDA certification provisions, the submission of good faith claims with accurate and complete supporting data, which facilitates the orderly resolution of any quantum due as a result of the termination. *See* 41 U.S.C. § 605(c)(1); *see also United States v. Turner Construction Co.*, 827 F.2d 1554, 1561 (Fed.Cir.1987).

The CDA interest provision also serves to provide "an additional inducement for the settlement of claims short of litigation." *Brookfield Construction Co. v. United States*, 661 F.2d 159, 164, 228 Ct.Cl. 551 (1981). It makes little sense to say that termination settlement claims should not be treated as claims under the CDA because they are merely in the predispute posture of negotiation, since a purpose of the CDA is to facilitate the settlement of claims short of litigation. Maintenance of a predispute posture should be encouraged, not penalized. Requiring a dispute before interest can accrue pushes the parties that much closer to litigation and only serves to encourage "creation" of a dispute in order to permit the payment of interest. If all other claims arising from contracts with the government currently handled under the CDA can be settled short of litigation, and that is the clear intent and purpose of the statute, it does not follow that treating settlement proposals in the same manner would somehow lead to a different result.

Allowing interest to contractors on their claims under the CDA was intended by Congress to make the bargaining process more equal so that the government could not unreasonably delay the claim analysis to the contractor's detriment. Since other types of CDA claims (not involving fraud) can be negotiated and settled, the fact that termination claims have historically been negotiated rather than merely granted or denied by the contracting officer is no reason to treat termination settlement claims differently from other claims under the CDA. Thus, I would conclude that a contractor should be able to elect to certify its settlement proposal as a CDA claim following a termination for the convenience of the government. Since Mayfair did exactly that, and there has been no suggestion that its initial certification was otherwise defective, I would conclude that Mayfair's termination settlement proposal was a valid CDA claim from August 2, 1982, the date on which the claim was validly certified in accordance with the CDA.

This court has held that a contractor can recover CDA interest even where the underlying quantum claim has been settled as long as the quantum claim was subject to the act and the settlement agreement did not extinguish the interest claim. *ReCon Paving, Inc. v. United States*, 745 F.2d 34 (Fed.Cir.1984). Since, unlike the majority, I would conclude that appellant's certified termination settlement proposal was a cognizable claim under the CDA and since the parties specifically excluded Mayfair's claim for interest from their settlement agreement, I would conclude that Mayfair is entitled to interest in accordance with the terms of 41 U.S.C. § 611:

> Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury....

According to the parties' stipulations, the total interest due on the $438,346 payment by the government for the period from the date of the initial certification of the claim, August 2, 1982, to the date of payment, May 28, 1985, would be $171,222.09. In my view, Mayfair is entitled to recover that amount.

### The "Interest on Interest" Claim

In addition to the above amount, Mayfair also asserts that the interest element of its certified claim of December 11, 1984, is

itself a claim under the CDA which entitles it to interest on the amount found due on that disputed claim element. In accordance with that theory, Mayfair alleges that since the CDA interest owed on the $438,346 ultimately paid amounted to $146,052 as of December 11, 1984, it is entitled to CDA interest on that amount for the period from December 14, 1984, the date that the contracting officer received the certified interest claim, through the future date when the $146,052 is ultimately paid by the government. Although the majority does not reach the so-called "interest on interest" issue in light of its holding that no interest is to be awarded at all, I will indulge in a brief comment thereon for the sake of completeness.

As evidenced by the use of the term "shall" in section 611, the terms of the section are mandatory. When a proper CDA claim (including certification) has been filed by the contractor and an amount stemming from the claim found to be due to the contractor, the contractor is entitled to receive interest on that amount from the date that the claim was certified. *E.g., Fidelity*, 700 F.2d at 1385. In fact, although it is uniformly done, it does not appear that the contractor need specifically mention that it seeks interest on the underlying claims in order to recover the interest under the statute since payment of such interest is mandatory. So, absent a dispute over whether the underlying claim is indeed a claim, payment of interest on the amount paid on the claim should necessarily follow in accordance with the statute, and the issue of additional interest on that interest does not arise.

Here, however, since there was a dispute over whether Mayfair's termination settlement proposal could be certified as a CDA claim, the issue did arise. The board in this case unanimously agreed that no interest could be paid to Mayfair on the unpaid

interest because only simple interest can be awarded against the Government. *See Brookfield*, 661 F.2d at 170; *United States v. Mescalero Apache Tribe*, 518 F.2d 1309, 1331–32, 207 Ct.Cl. 369 (1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Central Mechanical, Inc.*, ASBCA No. 29193, 85–2 BCA ¶ 18,005. However, the asserted "compound interest" in this case appears to stem from the fact that Mayfair seeks interest on an unpaid amount which itself happens to be interest. Thus, it appears that the interest sought here is indeed simple interest rather than compound interest, albeit simple interest based on an amount which happens to be interest itself, and therefore the claim for such should not necessarily be denied on that basis.

Nevertheless, I would also hold that interest could not be recovered on the unpaid interest of $171,222.09 [5] because the underlying claim to the "interest on interest" claim, the claim for interest on the termination claim, is not itself a claim under the CDA. Section 605(a) of the CDA provides that "[a]ll claims by a contractor against the government *relating to a contract* shall be in writing and shall be submitted to the contracting officer for a decision." (Emphasis supplied.) In my view, the termination claim at issue here is a claim by a contractor against the government relating to a contract; however, the "claim" for CDA interest on that claim relates not to the contract, but to the CDA itself. Since section 611 only provides for the payment of interest on claims received pursuant to section 605(a), the limited waiver of sovereign immunity contained in the CDA does not appear to extend to the payment of interest on unpaid CDA interest. *See, e.g., Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957) (the "limitations and conditions upon which

---

5. Assuming such interest recoverable, any claim for interest on unpaid interest would not actually accrue until the principal (the unpaid interest) is paid and the interest thereon is not. In this case, the alleged claim for interest on the unpaid interest accrued on May 28, 1985, so Mayfair's claim (and attempted certification thereof) for "interest on interest" made on December 10, 1984, was premature. Thus, contrary to Mayfair's alleged computation method, any additional recoverable interest should be based on the entire amount of interest owed on the settled claim ($171,222.09) from the date that the settled claim was paid but the interest was not.

the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied"); *Fidelity,* 700 F.2d at 1383 (no interest shall be awarded absent an express contractual provision or an Act of Congress specifically providing for payment).

The conclusion that a claim for interest on unpaid CDA interest is not itself a cognizable CDA claim is buttressed by the decision of the Court of Claims in *Brookfield.*[6] In an extensive analysis of the CDA interest provision, the court in *Brookfield* made no mention of allowing additional interest on the CDA interest ultimately determined to be due. Furthermore, in reaching its conclusion, the court also held that certification of the claim for CDA interest was not necessary.

As for the post-Act interest claim itself (distinguished from the underlying claims), no certification is necessary even though we assume *arguendo* that the claim was presented after March 1, 1979. Once the amounts for the underlying claims are set, the determination of the amount of post-Act interest is objective, legal, and mathematical, not lending itself to certification nor serving any of certification's fraud-preventive goals. It

would be needless, redundant, and overly-technical to require certification of that interest claim.

661 F.2d at 166–67.

The holding in *Brookfield* that claims for CDA interest do not need to be certified is a strong indication that such interest claims, while arising from the CDA, do not arise under a contract so as to qualify as CDA claims. Thus, claims for CDA interest would not themselves be entitled to CDA interest. *See Nab–Lord Associates v. United States,* 682 F.2d 940, 944, 230 Ct.Cl. 694 (1982) (in order for a contractor to receive interest under the CDA there must be an underlying claim for quantum which is governed by the act). Accordingly, for the reasons given, I would affirm that part of the board's decision holding that no additional interest could be recovered under the CDA on the $171,222.09 interest on the termination claim.

---

**6.** In *Brookfield,* the court held that a contractor was entitled to recover interest on claims pending before the contracting officer on March 1, 1979, the effective date of the CDA, despite the absence of an interest provision in the contract, and awarded simple interest on the amounts of the underlying claims from March 1, 1979 through the date of payment of those claims. 661 F.2d at 168–70.