**JOHNSON & GORDON SECURITY, INC., Appellant,**

v.

**GENERAL SERVICES ADMINISTRATION, Appellee.**

**No. 87–1624.**

United States Court of Appeals, Federal Circuit.

Sept. 21, 1988.

Blaine A'Mmon White, Lee & Harvey, Washington, D.C., argued for appellant.

David Bennett Stinson, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were James M. Spears, Acting Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director, Washington, D.C.

Before DAVIS,* NIES and NEWMAN, Circuit Judges.

NIES, Circuit Judge.

Johnson & Gordon Security, Inc. (J & G) appeals the decision of the General Services Administration Board of Contract Appeals, Johnson & Gordon Security, Inc., GSBCA No. 7,804, 87-3 B.C.A. (CCH) ¶ 20,074 at 101,639 (July 7, 1987) [available on WESTLAW, 1987 WL 41241], upholding the government's decision to terminate J & G's contract for default. We hold that the board had jurisdiction to hear the appeal under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601-13 (1982). With respect to the merits, we affirm.

## I

## BACKGROUND

J & G was the successful bidder on contract No. GS-11C-40209 to perform security guard services for the General Services Administration at its Parklawn Complex in Silver Spring, Maryland. That contract held J & G responsible for obtaining the private detective license required by the State of Maryland, Md. [Licenses] Code Ann. art. 56, § 75 (1957) (repealed by Acts 1986, ch. 830, § 1, effective October 1, 1986), before J & G could perform the contract services. Several months before it was awarded the contract on October 12, 1984, J & G advised the Contracting Officer (CO) that it had requested the required license and would provide proof of the license before commencing performance on January 1, 1985. Although J & G did not have the required license on that date, the CO allowed J & G to begin performance. J & G first submitted a formal application for the license on January 7, 1985, six days after it began performance. Allegedly because of difficulty in satisfying residency requirements imposed by Maryland, on January 15, 1985, the date J & G ceased performance, J & G still had no license. It finally became licensed on January 29, 1985.

On the morning of January 15, 1985, the CO's technical representative (COTR) received notice that officials of the State of Maryland planned to visit the buildings served by J & G guards and to arrest personnel not properly licensed. The COTR relayed that information to J & G, which then removed its officers from the buildings. In response, on the same day, the CO terminated the contract for default, citing two grounds: J & G's failure to comply with the contract's licensing requirement, and J & G's abandonment of its post. J & G appealed the termination to the board.

In that appeal, J & G argued that it was entitled to a ten-day cure notice before the

---

* Judge Davis, who died on June 19, 1988, took no part in the decision of this case.

contract could be terminated for default, because the government had waived the license requirement by allowing J & G to commence work without a license. J & G further argued that its failure to perform arose from causes beyond its control and without its fault or negligence, that is, Maryland licensing officials imposed a residency requirement contrary to the terms of a 1982 stipulation of dismissal in litigation brought by another party challenging the constitutionality of the residency requirement.

Addressing J & G's arguments, the board ruled that J & G had breached the contract by abandoning its post and that the breach was not due to causes beyond its control:

> It is uncontroverted that appellant left its post on January 15, 1985, the date that it was terminated.... It matters not whether appellant jumped or was pushed, for it left its post and had to be replaced by GSA Federal Protective Services employees.

> It is certain from the facts in this case that a ten day cure notice would have been a futile act on the part of the contracting officer. On January 15, 1985, the date appellant was terminated for default, appellant had abandoned its post and was unable and unwilling to continue to perform as required by the contract. Respondent did not order appellant to leave the premises. Even though a ten day cure notice would have been required before respondent could have terminated for J & G's failure to possess a license, the contracting officer never waived the basic contract requirement to provide guard services as of January 1, 1985, irrespective of J & G's ability to obtain a license, a matter directly related to the contractor's responsibility. Under the Default clause [of the contract], termination may be effected without a cure notice if the contractor, as here, fails to provide required services.

> In addition, appellant's failure to perform did not arise from causes which were beyond its control and without its fault or negligence. Appellant, in fact, obtained a license irrespective of the residency requirement, a matter which appellant did not raise with respondent until after the termination of its contract. Appellant simply risked a confrontation with state officials by not being more diligent in attempting to resolve the licensing requirement prior to commencement of work.

87–3 B.C.A. (CCH) at 101,641. Accordingly, the board upheld the termination for default and denied the appeal.

## II

## ISSUES

1. Did the board have jurisdiction to decide J & G's appeal of the default termination?

2. Did the board err in holding that J & G abandoned its post so that the government properly terminated its contract with J & G for default?

## III

## OPINION

### 1. *Jurisdiction*

■ The government contends that the board "did not have jurisdiction to entertain [J & G's] claim for a declaratory judgment that the default termination of its contract was erroneous," citing as "[t]he reason for this result ... Johnson & Gordon's failure to submit a proper claim for money to the contracting officer relating to this default termination." This court has recently considered the precise jurisdictional issue raised here in *Emily Malone v. United States*, 849 F.2d 1441 (Fed.Cir. 1988), which held that the board had jurisdiction.

Briefly, *Emily Malone* held that a government decision to terminate a contractor for default is the assertion of a government claim against such contractor within the meaning of the CDA, 41 U.S.C. § 605(a), which the contractor may appeal to the appropriate board without first submitting its own monetary claim to the CO, *id.* at §§ 605(a), 607(d). *See Emily Malone*, 849 F.2d at 1443. Each of the

government's jurisdictional arguments raised here was considered and rejected in that decision. Accordingly, we hold that the board had jurisdiction to consider the validity of J & G's default termination.[1]

### 2. *Abandonment*

With respect to the merits, if either ground asserted by the CO for default termination is supported by substantial evidence, the termination may not, as J & G requests, be converted into a termination for the convenience of the government. *See, e.g., Datronics Eng'rs, Inc. v. United States*, 418 F.2d 1371, 1375, 190 Ct.Cl. 196 (1969).

One ground asserted for default termination is that J & G abandoned performance of the contract. J & G contends, on the other hand, that the government terminated the contract before J & G's guards left the premises. Therefore, J & G urges us to conclude that it had not breached inasmuch as the government removed the guards.

An initial question is raised whether the board actually upheld the charge that J & G abandoned its post. J & G asserts that the board did not do so in view of a statement in its opinion that "[i]t matters not whether appellant jumped or was pushed." 87–3 B.C.A. (CCH) at 101,641. Although this statement may be somewhat ambiguous, other parts of the board's decision are clear. The board states unequivocally "that appellant left its post on January 15, 1985, ... appellant had abandoned its post[,] ... [r]espondent did not order appellant to leave the premises[,] ... [and] termination may be effected without a cure notice if the contractor, as here, fails to provide required services." *Id.* According-

ingly, we reject J & G's argument that the board did not decide the issue of abandonment. The issue of abandonment was decided and the board's decision was adverse to J & G.

Also before addressing the issue of whether the board's decision should be overturned as unsupported by the record, we note that this court's scope of review of factual determinations made by the boards of contract appeals is limited. *See* CDA, 41 U.S.C. § 609(b).[2] "[E]ven though the record may contain evidence which supports a contrary position, we will not alter a board's finding if substantial evidence supports it." *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984). Substantial evidence means, upon consideration of the entire record, there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mayfair Constr. Co. v. United States*, 841 F.2d 1576, 1577–78 (Fed.Cir.1988).

▮▮▮ As support for its contention that the board should have found that the government terminated the contract before J & G's guards left their posts, J & G relies on the wording of the termination letter itself, which reads in its entirety:

> Effective from the time your guard personnel are removed from post on Contract GS–11C–40209 this day, January 15, 1985, your contract is terminated for default.
>
> The default action is for failure to obtain the necessary state license as required in the contract and for post abandonment.

Letter from Donald T. Hale, Contracting Officer, to Mr. J.D. Chandler, Project Supervisor, Johnson & Gordon Security, Inc. (Jan. 15, 1985). J & G also relies on the

---

1. Because this court has decided that "the CDA grants the BCAs jurisdiction over default terminations [even] absent a monetary claim by the parties," *Emily Malone*, 849 F.2d at 1444, we need not resolve the parties' dispute over whether a monetary claim was part of J & G's appeal to the board.

2. The statutory standard of review is:
   In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 607 of this title,

notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

CDA, § 609(b) (1982).

testimony of its president, who stated that Hale, during a telephone call to him in Cincinnati on the morning of January 15, "told me to shut the service down and get [J & G's guards] out of there by 12:30."

J & G would have us interpret Hale's letter as indicating Hale anticipated removing J & G's personnel before Maryland officials acted to enforce the license requirement. Per J & G, Hale's letter and the testimony of J & G's president establish that Hale ordered J & G's personnel off their jobs. Thus, J & G reasons, J & G did not *abandon* its post, but was removed.

On the other hand, in support of the board's finding, Hale testified specifically that he did not intend to default J & G until J & G's agent removed his people. In addition to Hale's testimony, the COTR, who actually met with a representative of J & G in Maryland on the morning of January 15, testified that J & G's representative "advised me that he was pulling out all of his officers at 12:30 that day," and that in anticipation of their departure the COTR arranged for Federal Protection Officers to take over and maintain security.

To the extent the above evidence is conflicting, we must defer to the long-standing principle that the evaluation of conflicting testimony is for the finder of fact, not for this court. *See, e.g., Hambsch v. Department of Treasury*, 796 F.2d 430, 436 (Fed. Cir.1986). Further, we do not find firm support for J & G's decision in the CO's letter, which states that the contract would be terminated for default "[e]ffective from the time your guard personnel are removed." The letter is at best ambiguous with respect to which party removed the guards.

In sum, considering the record as a whole, substantial evidence supports the board's finding that J & G abandoned its post. Under the applicable standard of review, therefore, we must affirm the board's decision. We need not and do not reach the issues surrounding the second reason given for J & G's termination, failure to obtain the necessary state license as required by the contract. Any waiver of

that requirement does not extend to waiver of performance.

## IV

## CONCLUSION

Having considered both parties' arguments, we hold that the board had jurisdiction over the propriety of J & G's default termination. Reaching the merits, we affirm the board's decision that the government properly terminated J & G for default by abandoning its post.

AFFIRMED.