935 F.2d 281
 37 Cont.Cas.Fed. (CCH) 76,105
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ELDEN-RIDER, INC., Appellant,
v.
The UNITED STATES, Appellee.
 No. 90-1442.
 United States Court of Appeals, Federal Circuit.
 May 22, 1991.
 
 Before PAULINE NEWMAN, MAYER and LOURIE, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Elden-Rider, Inc. appeals from the March 30, 1990, decision of the General Services Administration Board of Contract Appeals, GSBCA No. 8643, denying Elden-Rider's claim for costs associated with an architectural-engineering contract. These costs allegedly occurred as a result of a request by the government to scale down the project for the renovation of a Federal building due to reduced funding. Because the Board correctly found that Elden-Rider failed to document its claim, we affirm.
 
 DISCUSSION
 
 2
 The General Services Administration (GSA) awarded Elden-Rider an architectural-engineering contract to renovate a Federal building in Huntington, West Virginia. Pursuant to the contract, on April 17, 1982, GSA directed Elden-Rider to prepare and submit final working drawings associated with the project.
 
 
 3
 However, by a letter dated June 17, 1982, GSA informed Elden-Rider that funding for the project would be reduced or "scoped down" from $3,152,000 to $2,760,000. GSA also indicated its desire to discuss any costs that Elden-Rider might incur as a result of "scoping down." A full conference was held, in July of 1982, between GSA and Elden-Rider, at which GSA, among other things, assured Elden-Rider that a fee adjustment would be made to account for costs incurred as a result of "scoping down."
 
 
 4
 The following December, a contracting officer informed Elden-Rider that his office would "entertain" a fully-documented claim for additional costs associated "with scoping the project down from $3,152,000 to $2,700,000."* On March 15, 1983, Elden-Rider submitted a request for a "modification of the contract" to cover costs associated with the "scope down," totaling $64,397.46. The letter was not certified and it provided no specific documentation indicating how the figure was calculated.
 
 
 5
 During a meeting in December of 1984, GSA proposed to pay $47,100, which it calculated by taking six percent of $785,000 (the difference between $3,485,000, which is the government's estimate of the original cost, and $2,700,000, which is the agreed upon "scope down" figure). Elden-Rider replied to GSA, stating that an additional cost of $17,760 was required for design costs incurred as a result of "scoping down," arriving at a total figure of $64,800, which it then reduced to $60,150.61, "the amount of our [Elden-Rider's] claim." GSA never acknowledged this figure.
 
 
 6
 On May 31, 1985, GSA informed Elden-Rider that a contract modification would be prepared to allow for the $47,100. Elden-Rider accepted GSA's figure because of its "desire for relief."
 
 
 7
 However, no contract modification was ever executed. On June 23, 1986, a contracting officer issued a final decision establishing a settlement amount of $47,100, but offsetting this with other assessment costs claimed by the government. Elden-Rider filed a pro se appeal with the Board.
 
 
 8
 Upon the advice of counsel, Elden-Rider then asked the Board to suspend the proceedings (because the entire claim exceeded $50,000 and did not have the necessary certification), and submitted an "amended and final claim request" for "scoping down" in the amount of $47,100, dated January 29, 1987. The contracting officer never issued a decision on the amended claim and therefore the Board considered it denied.
 
 
 9
 The Board concluded that the March 15, 1983, letter requesting $64,397.46 and Elden-Rider's later reduction to $60,150.61 were uncertified claims under the Contract Disputes Act. It accordingly held that the original $47,100 submission was a nullity because it arose from an uncertified claim in excess of $50,000. The Board also found Elden-Rider's January 29, 1987, amended claim for $47,100 the only "scope down" claim which had validity. Although GSA agreed to entitlement (but disagreed as to quantum), the Board denied the claim for lack of evidence to substantiate "the contention that it [Elden-Rider] incurred costs" from "scoping down."
 
 
 10
 This appeal is brought pursuant to the Contract Disputes Act of 1978, 41 U.S.C. Sec. 601 et seq. Our review of cases brought pursuant to this act is governed by 41 U.S.C. Sec. 609(b) (1988):
 
 
 11
 the decision of the agency board on any questions of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive, and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.
 
 
 12
 "Thus, even though the record may contain evidence which supports a contrary position, we will not alter a Board's finding if substantial evidence supports it." Erickson Air Crane Co. of Washington, Inc. v. United States, 731 F.2d 810, 814 (Fed.Cir.1984). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Mayfair Construction Co. V. United States, 841 F.2d 1576, 1577-78 (Fed.Cir.1988), cert. denied, 488 U.S. 980 (1988).
 
 
 13
 We have reviewed the record and have determined that the Board's finding that no documentation was provided for Elden-Rider's "scope down" claim was supported by substantial evidence. There is no documentation showing support for the "scoping down" claim. That being the case, the Board did not err.
 
 
 14
 Elden-Rider argues that the contracting officer had agreed to, and in fact had suggested, the $47,100 settlement. However, the Board found that GSA officials explicitly told Elden-Rider that payment would be made for "scoping down" the project only after Elden-Rider fully documented its claim for additional costs of "scoping down" the project. There was no supporting documentation for its "scope down" claim. Other than GSA's counter proposal to Elden-Rider's original "claim," which is not documentary support that Elden-Rider incurred such costs, the record is absent of any documentation supporting the contention that Elden-Rider incurred costs in the amount of $47,100, or $60,150.61. The burden of proof was on Elden-Rider to substantiate that it incurred costs resulting from "scoping down." Elden-Rider failed to satisfy its burden, and the Board correctly found that "no documentation of costs was ever presented." Accordingly, there were adequate grounds for the Board to reject Elden-Rider's claim of $47,100, given the lack of proof that it incurred these costs.
 
 
 15
 Because substantial evidence supports the Board's finding that Elden-Rider failed to submit documents supporting its costs, we need not address whether any of Elden-Rider's requests for over $50,000 constituted uncertified claims or whether the claim for $47,100 required certification. We conclude that the Board's decision denying Elden-Rider's amended "scope down" claim of January 29, 1987, was correct as a matter of law and was supported by substantial evidence.
 
 
 
 *
 There are discrepancies in numbers used by the parties. For example, $2,760,000 is referred to, as is 2,700,000. Also, the Board referred to Elden-Rider's costs proposal of $64,000 as a request for $64,397.46. The parties do not contest these discrepancies or explain them. They are not material to the resolution of this case