FIDELITY CONSTRUCTION
COMPANY, Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 27–82.

United States Court of Appeals,
Federal Circuit.

Feb. 18, 1983.

---

Maurice J. Mountain, McLean, Va., argued for appellant. With him on the brief were William B. Barton, Jr. and Brown, Younger & Fadoul, P.C., McLean, Va.

Robert G. Giertz, Washington, D.C., argued for appellee. With him on the brief was J. Paul McGrath, Asst. Atty. Gen., Washington, D.C.

Before FRIEDMAN, NICHOLS, and BALDWIN, Circuit Judges.

NICHOLS, Circuit Judge.

This is an appeal from a decision of the Department of Transportation Contract Appeals Board (board) which found that appellant was not entitled to attorney fees under the Equal Access to Justice Act, Pub.L. No. 96–481, 94 Stat. 2325, 28 U.S.C. § 2412 (Supp. V 1981) (EAJA), and which also found that appellant was entitled to interest on its claims under the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* (Supp. V 1981), (CDA), from the date it submitted a claim reasonably reflective of the actual dollars and efforts expended due to the causes alleged. *Fidelity Construction Co.,* 82–1 B.C.A. ¶ 15,633. We affirm, but on different grounds than the board gave.

I

Appellant, Fidelity Construction Company (Fidelity), was awarded a contract for a VICON experimental lighting system at Bradley International Airport in Windsor Locks, Connecticut, by the Federal Aviation Administration (FAA) on April 19, 1979. The specification required the construction of signal lights along the length of three runways, together with underground electrical cables to connect these lights with the control tower, in accordance with FAA specifications. The contract was not a lump sum fixed price contract, as 13 of the

20 bid items called for the submission of unit prices on the basis of an estimated quantity stated for each item. The parties used an estimated contract price of $176,-999.99 for accounting and budgeting purposes.

Disputes arose between the parties during performance of the contract culminating in a 25 item claim totaling $237,348.12, which was filed with the contracting officer on October 26, 1979. Fidelity subsequently revised its claim on three separate occasions: revisions on November 15, 1979, November 30, 1979, and again on January 23, 1980, brought the total claim to approximately $251,000. The final decision of the contracting officer, dated March 28, 1980, found that Fidelity had supported $37,-648.29 of the total amount claimed, but denied the claim in its entirety because of the belief that fraud was involved in its submission.

Fidelity appealed the final decision of the contracting officer to the board. At a pretrial conference, the board advised Fidelity and the contracting officer that the certification requirement had not been met. After the docketing of the appeal to the board, by letter dated May 29, 1980, addressed to the contracting officer, Fidelity, having retained present counsel, submitted a revised claim totaling $257,066. This revision was the first and only revision that was certified as required by section 6(c)(1) of the CDA. The certified claim was submitted to the contracting officer and the board. The contracting officer did not alter his position on the claim, and Fidelity proceeded with its appeal.

Fidelity's presentation at the board hearing sought $308,475. After completion of the hearing, the board determined that Fidelity was entitled to $199,032.99 for items priced by contract schedule and $121,740.05 in equitable adjustments resulting in a final contract price of $320,773.04 "plus interest on hitherto unpaid amounts, computed in accordance with the Contract Disputes Act from the date of filing of the certified claim, May 19, 1980,[1] until payment, on those amounts not previously paid." *Fidelity Construction Co.,* 81–2 B.C.A. ¶ 15,345 at 76,018.

Fidelity filed a Motion for Reconsideration requesting both an award of attorney fees under the EAJA and an award of interest from October 26, 1979, the date of the initial submittal of the claim, rather than the date of the filing of the certified claim. The board held that the EAJA did not authorize the board to award fees earned by services before October 1, 1981. Since the fees sought by Fidelity were all incurred prior to that date, the board dismissed the motion.

The board also found that its initial determination that interest was to be computed from the date of filing of the certified claim must be reconsidered in light of the decision in *Brookfield Construction Co. and Baylor Construction Corp. v. United States,* 661 F.2d 159 (Ct.Cl.1981). The board held that interest would run from "the date on which [Fidelity] first submitted a claim which was not grossly overstated but which in fact was reasonably reflective of the actual dollars and effort expended due to the causes alleged." *Fidelity Construction Co.,* 82–1 B.C.A. ¶ 15,633 at 77,226. This was the certified claim.

## II

We shall first consider the issue of the date on which interest under the CDA will begin to run on a post-CDA contract claim.

At the initial hearing, the board undertook to analyze each of the claim items submitted by the contractor before certification, and to show they were so grossly inflated as not to be a proper basis for a settlement. Apparently they were prepared in the old manner, so objected to by Admiral Rickover, with little relation to

---

1. There appears to be a discrepancy in the board's decision concerning the date of the certified claim. Both parties refer to the certification date as May 29, 1980.

facts and intended only as a starting point for bargaining. *See Contract Disputes Act of 1978: Joint Hearings on S. 2292, S. 2787 & S. 3178 Before the Subcomm. on Federal Spending Practices and Open Government of the Senate Comm. on Governmental Affairs and the Subcomm. on Citizens and Shareholders Rights and Remedies of the Senate Comm. on the Judiciary, 95th Cong., 2d Sess. 27 (1978).* (Testimony of Adm. Hyman G. Rickover, Deputy Commander, Nuclear Power Directorate, Naval Sea Systems Command.)

The contractor's first actual notice of the certification requirement was apparently also its first awareness of its need for properly substantiated claims. Thus the certification requirement served exactly the purpose for which it was intended. The originally filed claims were not so much in excess of the amount later approved by the board, but they overstated some items and failed to mention others. The parties have debated before us the relevance of these facts. Since, however, the certification requirement is jurisdictional, it would not have made any difference if the original claims had, except for the absence of certification, been in perfect order. The discussions and arguments critical of the original claims are, therefore, irrelevant, and, for reasons discussed below, the board was right the first time in holding, without qualification, that interest did not start to run before certification.

■ An allowance of interest on a claim against the United States, absent constitutional requirements, requires an *explicit* waiver of sovereign immunity by Congress. Such express consent to the payment of interest must be found in either a specific statutory or an express contractual provision. *United States v. N.Y. Rayon Co.,* 329 U.S. 654, 658–59, 67 S.Ct. 601, 603–604, 91 L.Ed. 577 (1947); *Bromley Contracting Co. v. United States,* 596 F.2d 448, 450 (Ct.Cl. 1979). *See* 28 U.S.C. § 2516(a). The intent by Congress to permit the recovery of interest cannot be implied. Moreover, if an express consent is found in a statute or contractual provision, it must be strictly construed. *United States v. N.Y. Rayon Co.,* 329 U.S. at 659, 67 S.Ct. at 604.

The Contracts Disputes Act of 1978 contains the specific statutory consent to the payment of interest and governs the claim at bar. Section 12 of the CDA provides:

Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 6(a) from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92–41 (85 Stat. 97) for the Renegotiation Board.

Fidelity argues that the language of the interest provision is unambiguous in providing for interest on a claim submitted under section 6(a) and that the certification requirement is irrelevant. Fidelity contends that certification is merely intended to establish a date by which the contracting officer is obligated to act on a claim. Fidelity also argues that the legislative history of the CDA and the *Brookfield* decision established that there is no relationship between the interest provision and the certification requirement. We cannot agree.

■ As a general proposition, we would say that a waiver of sovereign immunity, or consent to be sued, or to the creation of money liability by judgment of a court, is construed by rules peculiar to itself. Not only may the consent not be implied, but even a seemingly explicit consent will not be effective if the language used appears too sweeping and contrary to the overall statutory scheme as judicially deduced.

An example of this is found in the history of the original Tucker Act, 24 Stat. 505, Act of March 3, 1887. It consented to suit on "[a]ll claims founded upon * * * any contract * * * in respect of which claims the party would be entitled to redress against the United States either in a court of law,

equity, or admiralty, if the United States were suable," yet it was soon held that the "equity" language meant only use of equitable doctrines in suits at law for money, and did not encompass suits for specific performance of contracts, then a typical branch of equity jurisprudence. *United States v. Jones,* 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889). The reason stated was that the whole statutory machinery, considered all together, justified a doubt whether Congress intended to confer jurisdiction upon courts to order the executive branch to perform contracts. This case is still cited and is still good law today respecting the scope allowed to equity jurisprudence in contract actions. For this reason we do not think any conclusion can be drawn from the fact that section 12, quoted *supra,* cross-references to section 6(a) and not section 6(c) which requires the certification. If it indicates at all that Congress intended that interest should start without certification, it does so only in the most ambiguous manner, or at most, only by implication which is not enough. Such a construction cannot possibly stand as against the entire statutory scheme, which is so obviously to the contrary. It would be anomalous for one to base a claim on the Contract Disputes Act and yet be allowed to ignore a basic requirement of the law claimed upon.

■ Moreover, the statutory mandate that all claims over $50,000 must be certified is one of the most significant provisions of the CDA. The importance Congress ascribed to the certification requirement as a mechanism to discourage the submission of unwarranted claims and encourage prompt settlements was fully discussed in *Lehman v. United States,* 673 F.2d 352 (Ct.Cl.1982) and need not be repeated here. Suffice to say that certification is not a mere technicality to be disregarded at the whim of the contractor, but is an unequivocal prerequisite for a post-CDA claim being considered under the statute. The CDA "requires that to be valid a claim must be properly certi-

fied." *Folk Construction Co. v. United States,* Ct.Cl. No. 99-80C (order entered January 16, 1981). Unless that requirement is met, there is simply no claim on which a contracting officer can issue a decision. *Skelly & Loy v. United States,* 685 F.2d 414 (Ct.Cl.1982). The submission of an uncertified claim, for purposes of the CDA, is, in effect, a legal nullity and therefore no interest can accrue.

The allowance of interest from the date of the filing of an uncertified claim would be inconsistent with the Congressional purpose because it would eliminate an important incentive for contractors to certify claims. The fact that a contractor cannot obtain interest upon an allowed claim unless it is certified is a compelling reason for contractors to certify all claims before filing them.

■ The legislative purpose of the interest provision of the CDA provides additional support for the conclusion that interest cannot accrue on an uncertified claim. Congress was concerned with fully compensating contractors for additional costs incurred in a continuing performance under a contract. An award of interest on amounts found due on contract claims will, of course, further the congressional intent to fully compensate the contractor. On the other hand, the interest provision provides an "additional inducement for the settlement of claims short of litigation." *Brookfield,* 661 F.2d at 164. The interest provision was designed to serve as a catalyst and a monetary incentive to the contracting officer to expedite consideration of contract claims. *Id.* at 164-65. But a contracting officer has authority to decide only properly submitted "claims", and an uncertified claim is not a "claim" that has been "properly submitted" to the contracting officer for a decision. *Skelly & Loy v. United States,* 685 F.2d at 419. To allow interest to accrue on a claim on which the contracting officer has no authority to issue a decision would not only be absurd, but would compensate a contractor for delaying the settlement of the contract claim.

We note further that the interest provision was amended on motion of the chairman of the reporting committee shortly before final passage. Previously it had allowed interest from the time the claim "first accrued," not when it was filed with the contracting officer. At the same time and in the same way, the certification requirement was added. 124 Cong.Rec. 36260–36268 (1978). It is necessary to note this because it makes irrelevant statements in earlier legislative history (see 1978 U.S. Code Cong. & Ad.News 5235, 5266) which discussed the interest provision as it then was.

This decision does not conflict with the holding in *Brookfield*. In that case, our predecessor court held that interest on contract claims filed with the contracting officer before the effective date of the CDA (March 1, 1979), but decided by the contracting officer after that date, are recoverable from the effective date of the CDA until the date of payment of the underlying claims. The issue whether a contractor may recover interest on uncertified claims submitted after the effective date of the CDA was not decided. 661 F.2d at 166, n. 19. The contract claims in *Brookfield* were "properly submitted" to the contracting officer under the then-existing law and we found no statutory mandate to apply the certification requirement retroactively. In the instant case, the claim was not "properly submitted" to the contracting officer until it was certified in accordance with the CDA.

We affirm the board's decision that interest did not begin to run on the underlying claim until May 29, 1980, but do so on the ground that this was the date the claim was certified and thus "properly submitted" to the contracting officer for decision.

III

We now turn to the question whether a contractor who prevails on its claim before a board of contract appeals may by it be awarded attorney fees under the EAJA. As mentioned previously, the board dismissed Fidelity's motion for attorney fees because of its belief that it did not have authority to award fees incurred prior to October 1, 1981. We need not reach the issue of the retroactivity of the EAJA[2] in this situation, because we hold that the board of contract appeals is without jurisdiction to award fees under this Act retroactively or prospectively applied.

 We begin our analysis of the board's authority to award attorney fees against the United States, as we did in our analysis of the authority to award interest against the United States, by stressing that the doctrine of sovereign immunity must be overcome before there can be an award of such attorney fees. To overcome this doctrine, we must therefore find specific statutory language that *expressly* authorizes such an award. *Nibali v. United States,* 634 F.2d 494, 497 (Ct.Cl.1980), and cases cited therein. The waiver of sovereign immunity must be unequivocally expressed. Neither this court nor any agency is authorized to award attorney fees against the United States by mere implication or by "negative inference."

Fidelity argues that a broad congressional waiver of sovereign immunity for an

2. One provision of the EAJA states that a party "dissatisfied with the fee determination" of an agency "may petition for leave to appeal to the court of the United States having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication. If the court denies the petition for leave to appeal, no appeal may be taken from the denial." 5 U.S.C. § 504(c)(2) (Supp. V 1981).

Fidelity did not petition either the Court of Claims or this court for leave to appeal the board's decision denying attorney fees. This is a new statute, however, and at oral argument Fidelity requested that we treat its appeal as embodying a request for leave to appeal. We do so in this case. In the future, however, we shall apply the statute in accordance with its terms and shall not entertain any appeal from an agency fee determination unless we first have granted leave to appeal.

award of attorney fees and expenses is embodied in the EAJA. Although the EAJA lifts the bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute, it does so only to the extent explicitly and unequivocally provided. If the EAJA empowered the board of contract appeals to award attorney fees, we would find this grant of authority in a specific statutory provision of that Act. We cannot expand by implication the list of forums which are authorized to award fees under the EAJA.

 Fidelity first argues, somewhat timidly, that the proceeding before the board of contract appeals has evolved into an administrative adjudication governed by the Administrative Procedure Act (APA). Fidelity thus contends that the board derives its authority to award attorney fees under section 203 of the EAJA. 5 U.S.C. § 504(a)(1). Section 203, however, only authorizes the award of attorney fees in those adversary adjudications, whatever they are, that are subject to 5 U.S.C. § 554. In enacting the CDA, Congress explicitly stated that a board of contract appeals proceeding is not subject to the adjudicative procedure of 5 U.S.C. § 554. *See* S.Rep. No. 95–1118, 95th Cong., 2d. Sess., *reprinted in* 1978 U.S. Code Cong. & Ad.News, 5241, 5249. We have no difficulty concluding that section 203 of the EAJA does not provide statutory authority for a board of contract appeals to award attorney fees.

Fidelity next argues that the language of section 204, 28 U.S.C. § 2412(d)(3), renders the EAJA directly applicable to proceedings before the board of contract appeals. It provides:

> In awarding fees and other expenses under this subsection to a prevailing party in any action for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code, or an adversary adjudication subject to the Contract Disputes Act of 1978, the court shall include in that award fees and other expenses to

the same extent authorized in subsection (a) of such section, unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

Under this section, the court may award fees for service before a board only when it also awards fees for service before itself. *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387 (Fed.Cir.1982). Fidelity contends that Congress must have intended the board to award attorney fees under the EAJA; otherwise the reference to the CDA would be meaningless, for the court would be left with nothing to review when the claimant prevailed before the board.

 This interpretation misconstrues the express provision of the section and attempts to imply by negative inference a statutory authority which does not exist. Section 204 authorizes a *court* to award fees and expenses in reviewing CDA or specific APA proceedings. The "judicial review of an adversary adjudication" is that of the final decision of the administrative agency under the APA or, as in this case, the final decision of the board of contract appeals. There is no express language in section 204 granting the board of contract appeals the authority to award fees and expenses against the United States and no such authority will be implied. It is at least possible that Congress wrote this provision in this manner in order to deter the government from appealing board decisions adverse to it. This provision may therefore be meant to apply to CDA cases only when the contractor loses before the board but wins on court review.

We understand appellee will argue in an appropriate case, that the Claims Court does not have this authority to award fees. We do not make any assumption as to this question one way or the other.

Had Congress intended board of contract appeals to independently award attorney fees and expenses, it should have included

statutory language expressly so providing to satisfy the strict construction standard. An early version of the EAJA, H.Rep. No. 6429, clearly permitted the award of attorney fees and costs in agency adjudications under both § 554 of the APA, and § 605 of the CDA. *See Federal Contracts Report,* No. 837, June 23, 1980, at A–16. Moreover, the only pertinent amendment to H.Rep. No. 5612, the bill which became Pub.L. No. 96–481, 94 Stat. 2321, was that which allowed a *court* to award attorney fees and expenses in reviewing CDA proceedings; proposed amendments expressly allowing a board of contract appeals independently to award attorney fees were defeated. *See Federal Contracts Report,* No. 861, December 15, 1980, at A–8.

Finally, Fidelity suggests that the EAJA must be interpreted in a manner that furthers the legislative purpose of the CDA— that is, to provide a prompt, efficient, and less costly remedy of contract disputes through board adjudications. To this end, Fidelity contends that the EAJA may be applied to the board through section 8(d) of the CDA, which states that "the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the Court of Claims." 41 U.S.C. § 607(d). Although this argument is attractive and has been, in fact, successful in some board proceedings, we are not persuaded.

The decisions Fidelity cites in support of this proposition were rendered prior to October 1, 1982, the effective date of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (FCIA). *See e.g., Brand S. Roofing,* 82–1 B.C.A. ¶ 15,717. We are aware of no post-FCIA decisions on this point. It seems that if a board now tried to apply the EAJA through section 8(d) of the CDA with the rationale that the present Claims Court is empowered to award attorney fees under the EAJA, our reasoning here would apply and such an application would be in error. Appellee, however, does not even concede that the

Claims Court has any authority under the EAJA. Again, we do not make any assumption regarding what powers the Claims Court inherits from the Court of Claims or whether the Claims Court has the authority to award attorney fees.

Section 8(d) of the CDA was a floor amendment inserted to provide adequate authority to resolve breach of contract claims at the agency level. Nothing in the legislative history of the EAJA suggests that Congress intended this general provision of the CDA to take precedence over its specific determinations respecting the powers of boards to award fees.

■ As we noted previously, Congress must expressly authorize an award of fees against the United States with specific statutory language. In construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress. It is an error to suppose that the ordinary canons of statutory construction are to be applied in this context, if they would add anything to what Congress has expressly said. Where, as here, a party's argument is "hopelessly dependent on implication and negative inferences," it ultimately must fail. *Nibali v. United States,* 634 F.2d at 497. The thrust of the Supreme Court's most recent decision, *United States v. Erika,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), is that broad and general language which might be construed as consenting otherwise, will not be so construed when Congress has elsewhere specified how and to what extent it consents to the specific liability to be enforced, or refuses consent.

■ In summary, the EAJA does not authorize boards of contract appeals to award attorney fees and expenses against the United States, and, for this reason, the board's dismissal of Fidelity's motion for attorney's fees and expenses is affirmed.

AFFIRMED.

BALDWIN, Circuit Judge, dissenting.

I dissent from the holding that interest accrues from the date a claim is certified. This ruling amends clearly drafted statutory language that marks the accrual of interest from the date a claim is submitted in writing and is, moreover, contrary to the purpose of the statute's interest provision. The majority justifies its exercise of legislative prerogative by stating that when a statute consents to the collection of interest on claims against the government, "[n]ot only may the consent not be implied, but even a seemingly explicit consent will not be effective if the language used appears too sweeping and contrary to the overall statutory scheme as judicially deduced." In fact, the language of the Contract Disputes Act (CDA) regarding the date from which a contractor is entitled to interest, is neither ambiguous nor contrary to the statutory scheme intended and enacted *by Congress.*

The interest provision of the CDA could not have been written more clearly to begin the accrual of interest from the date a claim is submitted. In mandatory terms, it says:

Interest on amounts found due contractors on claims *shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a)* of this title from the contractor until payment thereof * * *.

41 U.S.C. § 611 (Supp. V 1981) (emphasis added). Section 605(a) requires all claims to be submitted to the contracting officer in writing. Neither the interest provision nor section 605(a) refer to certification. Certification is made a requirement only for claims exceeding $50,000 by section 605(c) of the CDA.

The explicit language making interest run from the date a written claim is submitted to the contracting officer, rather than the date a claim is certified, implements the full measure of Congressional intent. The Senate report accompanying the CDA explains that Congress wanted to fully compensate contractors for the cost of money needed to finance continued performance after disputes arise and the contractors pursue their remedies through administrative and judicial channels. The drafters of the CDA expressed their purpose in the following way:

The rights of Government contractors who prevail on claims against the Government are unique since they have been required by language of the contract, for example, the changes article and the disputes article, to perform the work as directed by the Government without stopping to litigate. Thus, *Government contractors must perform and then argue about the amount of the equitable adjustment at some later time.* Since the contractor has been compelled to perform the work with its own money—in the total absence of contract payments or progress payments—there can be no equitable adjustment to the contractor until the contractor recovers the entire cost of the additional work. *The cost of money to finance this additional work while pursuing the administrative remedy, normally called interest, is a legitimate cost of performing the additional work.*

S.Rep. No. 95–1118, 95th Cong., 2d Sess., 1978 U.S.Code Cong. & Ad.News 5235, 5266 (emphasis added). When presented to Congress, the bill began interest from the date a claim accrued, an even earlier date than the date a claim is submitted. To address concern that determinations of when a claim accrues would be too difficult, the interest provision was amended to mark the beginning of interest from the date a claim is submitted in writing. 124 Cong.Rec. 36261, 36267 (1978). The change provided a more easily discerned date on which interest begins but did not change the purpose of the interest provision.

The majority finds a conflict between compensating contractors with interest from the date a claim is submitted and the certification requirement of the CDA. These two requirements of the statute,

however, do not conflict with each other, but achieve distinct, unrelated purposes.

Certification assures a contracting officer that the claim is made in good faith and that the supporting data is accurate and complete. With this assurance of a good faith claim based on accurate supporting data, the contracting officer is better equipped to settle cases rather than forcing contractors to prove their claims in litigation. Before a claim can be certified the contractor must review carefully his books and records. This may take days, weeks, or months, depending on the complexity of the claim and the integrity of the contractor's records. Amending the statute to tie the accrual of interest to the date a claim is certified, rather than to the date it is submitted in writing, needlessly pressures contractors to hurry certification of their claims. This pressure undermines the very accuracy certification was designed to provide and cannot be justified by a desire to eliminate unfounded claims. Contractors face an array of statutory sanctions which carry significant civil and criminal penalties for false claims.* In fact, the CDA contains a separate provision, supplementing these statutes, tailored to discourage unfounded claims. Under this provision of the CDA, contractors who are unable to support portions of their claim because of misrepresentation of fact or fraud, are made liable to the government for the unsupported part of the claim in addition to all costs to the government attributable to the cost of reviewing the unfounded part of the claim. 41 U.S.C. § 604 (Supp. V 1981). Contractors facing the serious consequences that may attend false claims against the government should not be prodded into hurrying the certification process by amending the CDA to deny them interest expressly granted by the statute.

The majority reasons that allowing interest to accrue before a claim is certified would compensate a contractor for delaying settlement of a claim. This assumes that contractors would consider leaving money in the government's hands, where it collects interest, as preferable to having the money in their own hands as soon as possible. Actually, a contractor has every economic incentive to certify a claim promptly to speed his receipt of money claimed. When the money is in the contractor's hands he can get as good an interest rate as the government gives, or he can put the money to some more urgent or productive use. From the contractor's perspective, delaying certification would have no economic benefit and may be economically irresponsible.

The Court of Claims decision in *Paul E. Lehman, Inc. v. United States*, 673 F.2d 352 (Ct.Cl.1982), relied on by the majority, does not provide authority for amending the interest provision. *Lehman* holds only that a contracting officer's decision must be made on a certified claim before the Court of Claims has jurisdiction to review the contracting officer's decision. The present case concerns only the date from which a contractor is entitled to interest, not jurisdiction or the reviewability of a contracting officer's decision. *Lehman* has no bearing on when interest begins on a claim over which this court has jurisdiction. The date from which a contractor gets interest is independent of certification or jurisdictional prerequisites or procedural requirements of the CDA.

I would give contractors interest from the date claims are submitted in writing to compensate them in accordance with the statute's express requirements and the intent of Congress.

* 31 U.S.C. § 231 (1976) (civil penalties provided for knowingly false, fictitious, or fraudulent claims); 18 U.S.C. §§ 286, 287, 1001 (1976) (civil and criminal penalties provided for activities involving knowingly false, fictitious or fraudulent claims and concealment of material information).