**James A. FULLARD, Sr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 07–542C.

United States Court of Federal Claims.

Aug. 31, 2007.

James A. Fullard, Sr., pro se, Cumberland, MD.

### OPINION AND ORDER

SWEENEY, Judge.

Before the court is plaintiff's *pro se* complaint ("Complaint" or "Compl.") seeking a court-appointed attorney and monetary and injunctive relief. Plaintiff alleges that defendant violated the Civil Rights Act of 1871, 42

U.S.C. §§ 1983, 1985(3), 1986 (1988) (the "Civil Rights Act"), by "intentionally, recklessly, willfully and wantonly caus[ing] an unnecessary deployment of the Judicial System with implication [sic] actions that violated the Constitution, and fraud." [1] Compl. 1. He further asserts that defendant deprived him of his rights under the Fifth, Eleventh, and Fourteenth Amendments of the United States Constitution. *Id.* Plaintiff also submits an application to proceed *in forma pauperis* ("Application"), which the court will deny because, as explained below, plaintiff does not meet the statutory requirements set forth in 28 U.S.C. § 1915 (2000) ("Section 1915"). The court deems it unnecessary to await a response from defendant regarding plaintiff's Complaint. For the reasons set forth below, the court dismisses plaintiff's Complaint without prejudice.

### I. BACKGROUND

James A. Fullard, Sr. is currently incarcerated at the North Branch Correctional Institution ("North Branch") located in Cumberland, Maryland. The present case is plaintiff's third attempt to obtain relief from the United States Court of Federal Claims ("Court of Federal Claims").

On April 20, 2007, plaintiff filed a *pro se*, handwritten complaint ("First Complaint") in this court against the Honorable Catherine Blake of the United States District Court for the District of Maryland ("U.S. District Court of Maryland"). *See Fullard v. Blake*, No. 07–247C, Order (Fed.Cl. Apr. 30, 2007) ("*Fullard* Order"). Plaintiff's First Complaint asserted claims against Judge Blake based on "the Sherman Act in lieu unto [sic] Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), 1986 (1988)" and other United States Code sections for "(1) reckless or callous indifference to the [sic] federally protected rights; (2) actual malicious intent; (3) conduct is [sic] motivated by evil intent; [and] (4) deprived [sic] of First, Fifth, Eighth, and Fourteenth Amendments." *Fullard v. Blake*, No. 07–247C, Complaint at 1 (Fed.Cl. Apr. 20, 2007). Plaintiff sought $6.5 million in damages and injunctive relief. *Fullard*

---

1. While plaintiff's Complaint is styled against the United States, the Complaint indicates 1 that the sole, target defendant is "the government of the District of Maryland." Compl. 1.

Order at 1. Ten days after its filing, the court dismissed the First Complaint for lack of subject matter jurisdiction. *Id.* at 1–2.

On June 12, 2007, plaintiff filed a second *pro se,* handwritten complaint ("Second Complaint") in the Court of Federal Claims. It too was dismissed for lack of jurisdiction. *See Fullard v. United States,* 77 Fed.Cl. 226, 231 (2007). In his Second Complaint, plaintiff asserted that his attorney, Roland Walker, lied when responding to plaintiff's request for a copy of a certain transcript.[2] *Id.* at 227. According to plaintiff, Mr. Walker told him that no transcript existed at the time of their conversation when, in fact, it did. *Id.* Plaintiff then accused Mr. Walker, Judge Blake, the Clerk of the U.S. District Court of Maryland, Felicia Cannon, and the "prosecutor for Baltimore City," Patricia Jessamy, of conspiring to alter the transcript of plaintiff's 2001 criminal trial, thereby obstructing justice. *Fullard,* 77 Fed.Cl. at 227. Plaintiff also sought to proceed *in forma pauperis,* but the court denied his application because plaintiff failed to comply with Section 1915. *Id.* at 228.

On July 16, 2007, plaintiff filed the instant *pro se* Complaint.[3] Although the United States is named as the defendant in the caption, once again, the handwritten Complaint alleges wrongdoing by neither the federal government, nor any other federal entity. In his Complaint, plaintiff avers:

> [P]laintiff brings this action against the government of the District of Maryland in conjunction with the Sherman Act in lieu unto [sic] Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), 1986 (1988). Here plaintiff has yet to be convicted within the

means of the arbiter of the United States, and withstating [sic] the provision in:

> (1) intentionally, recklessly, willfully and wantonly caused [sic] an unnecessary deployment of the Judicial System with implication [sic] actions that violated the Constitution, fraud; and

> (2) deprived [sic] of Fifth, Eleventh, and Fourteenth Amendment Rights.

Compl. 1. In support of his averments, plaintiff states the following:

> Each state is required to produce a government to facilitate the President of the United States in maintaining the appropriate action without the blessing inasmuch [sic]. However, the President of the United States has control over every mainstream behavior, and under circumstance [sic] determine the fact unto each conviction. In the wake of a [capital] offense, the President would give the government of said state the final work in carry[ing] out an execution. Prisoners of the United States are the responsibility of the President, thus the government within that District must administer the appropriate law to each individual accordly [sic]. The government receive[s] a progress report on each person convicted of a crime [no] matter of the situation. Every prisoner goes into a database in reference of [sic] the crime they have committed for future possibility of being pardon[ed]. However, the governor could not determine this fate, but the governor is responsible for maintaining the operation of each facility within their [sic] jurisdiction.[4] ... This action arose out of confrontation between the government and plaintiff.... The administration

---

2. The court assumed, based on the information provided in plaintiff's Second Complaint, that plaintiff was referring to the transcript of his 2001 criminal proceeding. *Fullard,* 77 Fed.Cl. at 227.

3. Plaintiff's Complaint is in the form of a handwritten, seven-page submission, which includes a page entitled "Relief Sought," and a page entitled *"In Forma Pauperis* under 28 U.S.C. § 1915(a) 2000 and Affidavit." Plaintiff submitted the following exhibits with his Complaint: (1) Letter from Mr. Walker to plaintiff, dated February 1, 2002, regarding the transcripts for plaintiff's criminal trial; (2) Memorandum from North Branch Institution to Housing Unit 6 In-

mate Population, dated April 11, 2007, listing vendors with which inmates may place catalog orders; (3) Letter from Inmate Grievance Office to plaintiff, dated June 25, 2007, concerning a grievance filed with the Inmate Grievance Office; and (4) two copies of his Inmate Account Analysis statements, dated July 5, 2007 ("Inmate Account Analysis").

4. It is unclear to which governor plaintiff refers, although presumably it is the Governor of Maryland, given plaintiff's incarceration in that state. Further, plaintiff's allegations against "the governor" are unclear.

has yet to prove beyond a reasonable doubt this conviction.

*Id.* at 2 (footnote added). Plaintiff then alleges that the trial judge, defense attorney, and state's attorney conspired to alter the transcript of his 2001 criminal proceeding.[5] *Id.* Plaintiff also implies that he did not receive a fair hearing on the merits of his petition for habeas corpus in the U.S. District Court of Maryland. *Id.* at 3. Plaintiff invokes the United States Supreme Court's ("Supreme Court") two-part test to determine whether a case is ripe and indicates "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* On the page of the Complaint titled "Relief Sought," plaintiff requests a court-appointed attorney, injunctive relief, and monetary damages in the amount of $1,250,000.[6] *Id.* at 5.

## II. APPLICATION TO PROCEED *IN FORMA PAUPERIS*

In his Application, plaintiff represents he has no assets or security with any bank and is "on segregation at the North Branch [Correctional] Institution and struggling to maintain commissary items." *Id.* at 6. Plaintiff also submitted two copies of his Inmate Account Analysis from the Maryland Department of Public Safety and Correctional Services Inmate Banking System, which lists his monthly account balance from January 2007 through June 2007.[7]

Section 1915 permits courts of the United States to waive filing fees or security under certain circumstances[8] The statute provides, in relevant part:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(a)(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit *a certified copy* of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. §§ 1915(a)(1)-(2) (emphasis added). In ruling on a Section 1915 application, courts will examine the financial resources of

---

5. Plaintiff does not indicate specifically in his Complaint which transcript was "manufactured"; however, the court again assumes plaintiff is referring to the transcript of his 2001 criminal proceeding.

6. Plaintiff specifically requests $750,000 in punitive damages, $350,000 in "injunction" damages, and $350,000 in monetary damages. Compl. 5. He also requests "the court of the said [sic] to place the appropriate rule in conjunction herewith: 4; 7; 23; and 56." *Id.* The court assumes plaintiff is referring to the Rules of the United States Court of Federal Claims ("RCFC"), but is unable to decipher what relief the rules offer plaintiff in the context of his Complaint.

7. Although plaintiff's Application does not specifically reference the Inmate Account Analysis at-

tached thereto, the court assumes plaintiff submitted the document to meet the requirements under Section 1915.

8. While the Court of Federal Claims is not considered to meet the definition of a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (2000) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of Section 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia*, the court to adjudicate applications to proceed *in forma pauperis* pursuant to Section 1915).

the applicant, as well as the nature of the civil action.

The court's first task is to evaluate plaintiff's financial resources and determine whether plaintiff meets the technical requirements of Section 1915. *See Matthews,* 72 Fed.Cl. at 277 (indicating that a court must first determine whether a plaintiff is financially ineligible for waiver of the filing fee). Here, plaintiff's lack of financial resources satisfies the requirements under Section 1915(a)(1).[9] Specifically, plaintiff submitted an affidavit stating that he is a prisoner at North Branch, that he has no assets, and that he is bringing his claim under the Civil Rights Act. Compl. 6. Plaintiff, however, fails to meet the requirements of Section 1915(a)(2). While he submitted two copies of the Inmate Account Analysis, plaintiff did not certify either document. Section 1915(a)(2) specifically requires that the statement be certified by the "appropriate official of each prison at which the prisoner is ... confined." Plaintiff did not comply with this requirement. However, assuming plaintiff had satisfied the certification requirement, the court's inquiry would move beyond the examination of the applicant's financial resources to an evaluation of the nature of plaintiff's action.

■ Accordingly, the court's second task is to examine the allegations of the Complaint and review plaintiff's history of filing claims within the federal court system. *Matthews,* 72 Fed.Cl. at 277. If it is clear that the action is frivolous, malicious, or fails to state a claim, plaintiff's Application will be denied. *Carson v. Johnson,* 112 F.3d 818, 819 (5th Cir.1997). Indeed, a court is obligated "to 'dismiss an *in forma pauperis* claim if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial.'" *Dickens v. Taylor,* 464 F.Supp.2d 341, 346 (D.Del.2006) (quoting *Deutsch v. United States,* 67 F.3d 1080, 1089 (3d Cir.1995)). Furthermore, the "three strikes rule," codified at 28 U.S.C. § 1915(g), prohibits a prisoner from bringing a claim *in forma pauperis* if, "on 3 or more prior occasions, while

incarcerated or detained in any facility, [the prisoner] brought an action or appeal in a court of the United States that was dismissed on the grounds that it [was] frivolous, malicious, or fails to state a claim upon which relief may be granted." Complaints alleging that "the prisoner is under imminent danger of serious physical injury" are an exception to the "three strikes rule." 28 U.S.C. § 1915(g). Review of plaintiff's federal litigation history reveals that, on at least three occasions, he has filed claims or appealed decisions within the federal judicial system that were dismissed as frivolous. *See Fullard v. Blackston,* No. CCB–07–311, Order at 1–2 (D.Md. Feb. 22, 2007) (dismissing case because plaintiff had filed more than three complaints in federal district court that were dismissed as frivolous, and listing several of those cases); *Fullard v. Blackston,* No. RDB–06–1369, 2006 WL 4571988, at *1 (D.Md. June 6, 2006) (dismissing complaint pursuant to Section 1915(e)(2) as frivolous and noting dismissal will be the first "prior occasion" as defined under Section 1915(g)), *aff'd,* 206 Fed.Appx. 280, 280–81 (4th Cir. 2006) (per curiam) (unpublished) (affirming the district court's dismissal and holding that the appeal was frivolous as well). In addition, the two prior complaints filed in this court were dismissed for want of jurisdiction. *Fullard,* 77 Fed.Cl. at 231; *Fullard* Order at 2. Further, there is no evidence that plaintiff ever previously alleged that he was in "imminent danger of serious physical injury." Thus, the nature of plaintiff's action prevents this court from allowing plaintiff to proceed *in forma pauperis.*

Moreover, granting plaintiff's Application would not further Congress's purpose in enacting Section 1915. This statute "is designed to ensure that indigent litigants have meaningful access to the federal courts" and "to assure equality of consideration for all litigants." *Neitzke v. Williams,* 490 U.S. 319, 324, 329, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). This court's review of plaintiff's litigation history, both in the Court of Federal Claims and other federal courts, indicates that plaintiff has not been denied access to

---

9. Plaintiff's Inmate Account Analysis indicates his account balance as of June 2007 is $38.05. It appears plaintiff does not have sufficient funds to pay the filing fee.

the courts and that his claims have been fully and fairly reviewed. Consequently, this court denies plaintiff's Application.

### III. STANDARD OF REVIEW AND JURISDICTION

#### A. *Pro Se* Plaintiff

■ A *pro se* plaintiff's complaint, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'...." *Hughes v. Rowe,* 449 U.S. 5, 10 n. 7, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, a *pro se* plaintiff is not excused from meeting basic jurisdictional requirements. *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004) (unpublished). Moreover, the court has no duty to create a claim where a *pro se* plaintiff's complaint is so vague or confusing that one cannot be determined. *Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007); *Scogin v. United States,* 33 Fed. Cl. 285, 293 (1995). A duty is not created because an overly confusing or incoherent complaint " 'makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.' " *Scogin,* 33 Fed.Cl. at 293 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir. 1994)).

#### B. Subject Matter Jurisdiction

The subject matter jurisdiction of the Court of Federal Claims is a threshold matter and must be established before the merits of plaintiff's complaint may be heard. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A challenge to a court's subject matter jurisdiction may be raised at any time by the parties, or by the court *sua sponte.* *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004). The party seeking to invoke jurisdiction, not the party challenging it, bears the burden of proving jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In deciding whether to dismiss for lack of subject matter jurisdiction, a court must "consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988).

#### C. The Tucker Act

The Court of Federal Claims is a court of limited jurisdiction. *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997). The scope of the Court of Federal Claims's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fid. Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *King,* 395 U.S. at 4, 89 S.Ct. 1501. Therefore, except when Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *United States v. Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

The Tucker Act, 28 U.S.C. § 1491 (2000), confers jurisdiction upon the Court of Federal Claims and waives sovereign immunity with respect to certain actions for monetary relief filed against the United States. *United States v. Mitchell,* 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Under the Tucker Act, sovereign immunity is waived for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act itself, however, does not establish a substantive right of recovery. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 398, 96

S.Ct. 948, 47 L.Ed.2d 114 (1976). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398, 96 S.Ct. 948. Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir. 1994).

## IV. DISCUSSION

### A. The Sherman Act and the Civil Rights Act

■ Plaintiff's Complaint does not indicate clearly his theory for relief against defendant. Plaintiff states that he "brings this action against the government of the District of Maryland in conjunction with the Sherman Act in lieu unto [sic] Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(3), 1986 (1988)." Compl. 1. A straightforward reading of the Complaint would suggest that plaintiff is relying on the Sherman Act rather than the subsequently cited sections of the Civil Rights Act. This interpretation, however, would not be consistent with the allegations in plaintiff's Complaint, which pertain to criminal matters, and not anticompetitive trade activity. Accordingly, the court assumes that plaintiff's suit is grounded on the Civil Rights Act, despite plaintiff's reference to the Sherman Act. Nevertheless, jurisdiction under the Civil Rights Act is "conferred exclusively on the United States District Courts." *Lowe v. United States*, 76 Fed.Cl. 262, 266 (2007) (citing 28 U.S.C. § 1343(a) ("The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... (4) To recover damages or to secure equitable or other relief under any act of Congress providing for the protection of civil rights....")). Thus, this court cannot adjudicate plaintiff's Civil Rights Act claims.

### B. Claims Against Parties Other Than the United States

■ Despite this court's efforts to "untangle the webs spun in [this] Complaint," plaintiff's Complaint fails to specifically implicate the federal government. *Wright v. United States*, 20 Cl.Ct. 416, 419 (1990). While the caption of the Complaint identifies the United States as the sole defendant, plaintiff advances claims against the "government of the District of Maryland." Compl. 1. A plaintiff cannot invoke Tucker Act jurisdiction by merely naming the United States as the defendant in the caption of the complaint but failing to assert any substantive claims against the federal government. *See May Co. v. United States*, 38 Fed.Cl. 414, 416 (1997) (refusing to allow a plaintiff's complaint against local Louisiana entities to proceed in the Court of Federal Claims simply because the plaintiff listed the United States as the defendant in the caption of the complaint). Here, "although the caption literally names the United States as the sole defendant, a cursory reading of the petition ... demonstrates that the United States was not involved *in any manner*" in any of plaintiff's allegations. *Id.*

■ Plaintiff also asserts that private parties, federal and state officials, and the U.S. District Court of Maryland are responsible for alleged misconduct, including obstruction of justice.[10] However, the jurisdiction of the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, ... and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." *Sherwood*, 312 U.S. at 588, 61 S.Ct. 767. It is "well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." *Nat'l City Bank v. United States*, 143 Ct.Cl. 154, 164, 163 F.Supp. 846 (1958). This court does not have jurisdiction to hear claims against individual federal government officials, prosecutors, or judges. *See Stump v. Sparkman*, 435 U.S.

---

**10.** In addition to referencing the President of the United States and the governor in the Complaint, plaintiff implicates the "trial judge, defense, and state attorney's [sic]." Compl. 2.

349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (recognizing federal judges are immune from suit when, "at the time [the judge] took the challenged action," the judge had the authority to act); *Imbler v. Pachtman*, 424 U.S. 409, 422–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (recognizing common law immunity for public prosecutors); *Frank's Livestock & Poultry Farm, Inc. v. United States*, 17 Cl.Ct. 601, 607 (1989) (recognizing that the Court of Federal Claims does not have jurisdiction over claims against federal officials). In addition, the Court of Federal Claims does not have jurisdiction to hear claims against states or state officials. *See* 28 U.S.C. § 1491; *Berdick v. United States*, 222 Ct.Cl. 94, 612 F.2d 533, 536 (1979); *Wright*, 20 Cl.Ct. at 420–21. In sum, because plaintiff's Complaint alleges no substantive claims against the United States, the court does not have jurisdiction to rule on the merits of plaintiff's claims.

### C. Fraud

■ Under RCFC 9(b), plaintiff must plead "the circumstances constituting fraud ... with particularity." The purpose of pleading fraud with particularity is to allow formulation of a responsive pleading and guard parties from baseless claims. *Tyger Constr. Co. v. United States*, 28 Fed.Cl. 35, 53 (1993). "Fraud allegations should contain references to time, place, and manner of the fraud." *Id.* Plaintiff is correct in his assertion that this court must take all allegations as true and construe them in a light most favorable to him, Compl. 3; however, the pleader must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, — U.S. —, —, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). If a plaintiff fails to meet the requirements of RCFC 9(b), the Court of Fed-

eral Claims may dismiss the complaint without prejudice or allow the deficiency to be "cured by a later disclosure." *Jana, Inc. v. United States*, 41 Fed.Cl. 735, 741 (1998). In the present case, plaintiff does not meet this burden, since he did not indicate the time, place, or subject matter of the alleged fraud. Moreover, plaintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction. 28 U.S.C. § 1491; *Joshua v. United States*, 17 F.3d 378, 379 (Fed.Cir. 1994).

### D. Deprivation of Fifth, Eleventh, and Fourteenth Amendment Rights

■ Plaintiff also asserts that he has been deprived of his Fifth,[11] Eleventh,[12] and Fourteenth Amendment rights under the Constitution. As stated above, pursuant to the Tucker Act, this Court has jurisdiction over money-mandating claims arising under certain provisions of the Constitution, including the Takings Clause of the Fifth Amendment. However, it is well-established that this court lacks jurisdiction over due process and equal protection claims pursuant to the Fifth and Fourteenth Amendments because neither clause is money-mandating. *Collins v. United States*, 67 F.3d 284, 288 (Fed.Cir. 1995) ("[T]he due process clause does not obligate the government to pay money damages."); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988) (holding that the due process and equal protection clauses of the Fifth and Fourteenth Amendments "do not trigger Tucker Act jurisdiction in the courts").

### E. Plaintiff's Complaint Is Frivolous Under 28 U.S.C. § 1915A

In cases such as this one where a prisoner sues a governmental defendant, 28 U.S.C. § 1915A(a) ("Section 1915A") directs the

---

11. Because plaintiff does not allege facts to support a Fifth Amendment taking and asserts that "[t]he administration has yet to prove beyond a reasonable doubt this conviction," Compl. 2, the court assumes that plaintiff refers to the Due Process Clause of the Fifth Amendment.

12. "The Eleventh Amendment bars federal jurisdiction over suits brought against states...." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99, 104 S.Ct. 900, 79 L.Ed.2d 67

(1984); *see also Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir.2007) (stating that "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities" unless immunity is waived). As explained above, the only proper defendant in the Court of Federal Claims is the United States. Thus, the Eleventh Amendment has no application in this court.

court to screen such applications and to dismiss actions without merit. Specifically, Section 1915A provides:

> (a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b). Plaintiff qualifies as a prisoner under Section 1915A.[13]

Plaintiff's Complaint meets both grounds for dismissal under Section 1915A. First, plaintiff's Complaint is frivolous. Plaintiff's First Complaint against Judge Blake, filed in the Court of Federal Claims in April 2007, was dismissed because the court "[did] not have jurisdiction to adjudicate general civil rights claims that are not based upon an appropriate money-mandating provision." *Fullard* Order at 1. Further, the court held that it lacked jurisdiction to decide claims seeking injunctive relief or damages against state or district officials and claims against individual federal government officials. *Id.* at 1–2. Then, two months later, in June 2007, plaintiff filed his Second Complaint in this court, which was dismissed for lack of jurisdiction on the grounds that plaintiff could not maintain claims against private parties and state officials in this court. *Fullard*, 77 Fed.Cl. at 229–30. The court also found that it lacked jurisdiction over plaintiff's First, Fifth, Seventh, and Fourteenth Amendment claims. *Id.* at 230. In the instant Complaint, plaintiff attempts to resuscitate claims that this court previously dismissed for lack of subject matter jurisdiction. Plaintiff's repeated attempts to prosecute civil rights claims against private parties and state officials, which this court already determined are not within its jurisdiction to decide, exemplifies frivolous litigation. *See Chandler v. United States*, 31 Fed.Cl. 106, 110–11 (1994) (finding frivolous litigation where plaintiff continually disregarded the holding of the Court of Federal Claims and other courts and "continue[d] to prosecute his meritless claims with abusive zeal"). Second, as previously discussed, plaintiff seeks monetary damages against defendants who are immune from such relief. Thus, in addition to this court's lack of jurisdiction over plaintiff's Complaint, the Complaint is subject to dismissal as frivolous pursuant to Section 1915A.

Judge Blake's comments regarding plaintiff's multiple, frivolous complaints in *Fullard*, No. CCB–07–311, are especially apt here:

> [Plaintiff] continues to file related or identical claims without payment of the filing fee. In short, the dismissal of his claims has not discouraged his efforts to file complaints or other actions concerning a matter which has been determined to be frivolous. The litigation filed by plaintiff has become vexatious and places a burden upon this court which is unfair to the numerous other pro se litigants with whom this court must share its time. "[F]ederal Courts have the power and the obligation to protect themselves from abusive filing of frivolous and repetitive claims." Each pleading filed by plaintiff requires staff review to determine if it is related to numerous previously-filed actions. Inevitably, each pleading results in the opening of a new case, because the nature of the complaint cannot be readily discerned.

*Fullard*, No. CCB–07–311, Order at 2 (citations omitted).

## V. CONCLUSION

Accordingly, based on the foregoing, plaintiff's application to proceed *in forma pauperis* is **DENIED**. Further, plaintiff's Complaint is **DISMISSED WITHOUT**

---

**13.** Section 1915A(c) defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

**PREJUDICE** for lack of jurisdiction. The Clerk shall not accept any further filings from plaintiff without first consulting with the undersigned.